# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

                 Plaintiff,

vs.

RAUL CASAREZ,

                 Defendant.

Case No.: 2:17-cr-00113-KJD-GWF

**FINDINGS & RECOMMENDATIONS**

**Re: Motion (ECF No. 26)**

This matter is before the Court on Defendant Raul Casarez's Motion to Dismiss Indictment (ECF No. 26), filed on May 19, 2017. The Government filed its Response (ECF No. 30) on June 2, 2017 and Defendant filed his Reply (ECF No. 36) on June 9, 2017. The Court conducted a hearing on June 14, 2017 at which it heard oral argument by counsel, but did not conduct an evidentiary hearing on Defendant's motion. The Court granted Defendant leave to file a supplemental brief in support of his request for an evidentiary hearing. Defendant filed his Supplemental Brief (ECF No. 44) on June 21, 2017.

## **BACKGROUND**

Defendant Raul Casarez moves for dismissal of the indictment filed on April 12, 2017 based on prejudicial pre-indictment delay by the Government. *See Motion to Dismiss* (ECF No. 26), pgs 6-9. Count One of the indictment charges Defendant with carjacking in violation of 18 U.S.C. §§ 2119 and 2. Count Two charges him with the use of a firearm during and in relation to a crime of violence in violation of 18 U.S. § 924(c)(1)(A) and 2. These crimes were allegedly committed on January 1, 2015. *Indictment* (ECF No. 20).

The Government initially filed a criminal complaint against Defendant relating to the subject charges on October 25, 2016. *Complaint* (ECF No. 1). The complaint states that Special Agent Lavon Cuyler of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATF"), learned on April 19, 2016 that officers of the Henderson Police Department had responded to a robbery call at a residence in Henderson, Nevada on January 1, 2015. During the call, the officers learned that an unknown Hispanic male adult, later identified as Defendant Casarez, and two other suspects tied up and robbed the victim of his personal property, including a 2002 Chevrolet S-10 pickup truck that was parked in the victim's garage. *Id.* at ¶ 4. One of the carjacking suspects was charged in the State of Nevada for her involvement in the crime. That suspect became a cooperating Defendant and provided information about the crime to law enforcement officers. The cooperating Defendant implicated Defendant Casarez as the person armed with a handgun during the crime. *Id.* at ¶ 5. The victim later identified Defendant Casarez through a photo line-up as the person armed with a handgun during the robbery. *Id.* at ¶ 6. The complaint further alleged:

> The cooperating Defendant stated that on approximately January 1, 2015, the cooperating Defendant, and CASAREZ pretending to be the cooperating Defendant, texted the victim to make arrangements for the cooperating Defendant and another person (hereinafter "co-conspirator") to visit the victim's residence. Sometime later that day, CASAREZ drove the cooperating Defendant and co-conspirator to the victim's residence. Shortly after arriving at the residence, the cooperating Defendant and co-conspirator approached the residence and made contact with the victim. Once inside, the cooperating Defendant left the front door unlocked for CASAREZ.
>
> Shortly thereafter, CASAREZ entered the residence with a handgun and ordered the cooperating Defendant and co-conspirator to tie up the victim by his/her wrist and ankles. CASAREZ told the victim what to do and that CASAREZ would shoot the victim if he didn't. Once the victim was restrained, CASAREZ passed the firearm to the cooperating Defendant and instructed him/her to point the gun at the victim during the entire incident. CASAREZ then robbed the victim of several items including a televison, a camera and other items. CASAREZ and his co-defendants loaded some of the stolen items into the victims's 2002 Chevrolet S-10 truck.
>
> After the robbery, CASAREZ, the cooperating Defendant, and co-conspirator left the residence. CASAREZ drove the yellow S-10 pickup truck with the stolen items belonging to the victim. The cooperating Defendant and co-conspirator followed CASAREZ in CASAREZ's vehicle. CASAREZ drove the truck to a church near the Fiesta Casino in Henderson and left it there because he felt the pickup truck drew too much attention since it was yellow. CASAREZ took the stolen items out of the

>pickup truck and put them in his car. On January 2, 2015, the yellow S-10 pickup truck was recovered by the police.

*Complaint* (ECF No. 1) ¶¶ 7-9.

Defendant Casarez's initial court appearance on the criminal complaint occurred on November 4, 2016. At that time he was informed of the charges against him, counsel was appointed to represent him and a preliminary hearing was set for November 18, 2016. *Minutes of Proceedings* (ECF No. 3). The parties thereafter entered into four stipulations to continue the preliminary hearing so that Defendant's counsel could obtain and review discovery, prepare the defense, and the parties could engage in plea negotiations. The court granted each of the stipulations. Prior to the last scheduled preliminary hearing on April 17, 2017, the Government obtained the indictment against the Defendant.

Defendant attached to his motion to dismiss law enforcement investigation reports that contain some contradictory statements regarding the alleged robbery/carjacking. According to an incident report prepared by Detective Christopher Aguiar of the Henderson Police Department on January 1, 2015, two officers were dispatched to the victim's residence at 9:01 P.M. in reference to a report of a robbery. Detective Aguiar arrived at the victim's residence at approximately 9:53 P.M. and interviewed him at approximately 10:10 P.M. *Motion to Dismiss* (ECF No. 26), *Exhibit A*, pg. 000017. Detective Aguiar stated:

>During the interview with [victim] I learned the following information: At about 5:30 p.m., he received a phone call from a girl he knows as Jessica. She asked what he was doing and said she was going to be in the area and might stop by. After a couple more phone calls the doorbell rang so he went outside to open the gate to allow Jessica inside the house. Jessica followed him inside and then two other people (male and female) came in behind him. The male was armed with a handgun and was holding it like you see in the movies. [Victim] described the gun as a small semi-automatic pistol with nickel plating. The male pushed [victim] into the den area and asked him where the money was located. [Victim] knew he had twenty dollars in his pants in the closet so he told the male there was money in the pants.
>
>The male tied [victim's] legs and arms and made the smaller girl kneel on top of him. [Victim] knew one of the items used to tie him up was the cord to his lava lamp. The items used to restrain him were not extremely tight but he explained he did not try to get out while they were inside the house because the male had a gun and the other girl was on top of him. [Victim] knew the suspects took a emachines computer, the 46 inch Mitsubishi television from the living room and his yellow 2002 Chevrolet S10 (NV 997REZ). The female got off him and the three left. He then

heard the engine of his truck start in the garage.

*Exhibit A*, pg. 000017

The victim provided a physical description of the suspect known as Jessica, including that she had "a tattoo of a set of wings across her upper chest and a tattoo on her back above her hips." *Exhibit A*, pg. 000018. The victim stated that he thought Jessica is white, but that she speaks Spanish and hangs out with a lot of Hispanic people. The victim identified the phone number that Jessica called him from. He said that he first met Jessica during the summer of 2014 at a Las Vegas 51s baseball game. They went out a couple of times, but he had not spoken to her in about a year. *Id.*

Henderson Detective Kevin Lapeer prepared a report in which he stated that he presented a photo line up of females to the victim on April 6, 2016 to see if he could identify the second female robber. The victim was unable to identify the female suspect from the photo line-up. *Exhibit A*, pg. 000022. The victim was also shown a photo lineup to see if he could identify the male robber. The victim selected the photograph of Defendant Casarez and stated that "he couldn't forget Raul's face due to the fact that he had a firearm pointed at his head. [Victim] stated that he was %100 positive that Raul was in fact the person who entered his residence with firearm." *Id.*

On August 10, 2016, federal task force officers interviewed Jessica at the United States Attorney's Office in Las Vegas. *Defendant Motion* (ECF No. 26), *Exhibit C*. The Assistant United States Attorney was present during this interview. Jessica told the interviewing officers that she met the victim in North Las Vegas and knew him "for a few years." *Id.* at 102. Jessica also stated that she had been in an abusive relationship with Defendant Casarez and that she had attempted to hide from him for a period of time. Defendant, however, was able to find her. Jessica stated that Defendant Casarez forced her to commit the robbery with him. She stated that Defendant drove her and the other female suspect, "Sofia," to the area of the victim's residence. Jessica and Sofia approached the residence and made contact with the victim. Jessica went inside the residence and hung out with the victim to get "high." The victim knew something was wrong because Jessica had a black eye. Jessica stated that she stayed near the front entrance and left the front door unlocked for Defendant. A few moments later, Defendant entered the residence and pulled out a gun and put the victim on the ground. *Exhibit C*, pg. 103.

The Government attached to its response a copy of the Henderson Police Department computer-aided dispatch ("CAD") report. *Response* (ECF No. 30), *Exhibit A*. The CAD report states that the victim stated that his friend Jessica knocked on the door. When he answered, Jessica, a female and male tied him up and stole his truck and took items from the residence. The victim stated that Jessica was an ex-girlfriend, and that he last saw her three weeks ago.

Defendant Casarez previously pled guilty in the United States District Court, for the District of Nevada, in November 2013 to a charge of escape. *See* United States v. Casarez, Case No. 2:13-cr-00356-APG-CWH. On March 28, 2014, he was sentenced to a fifteen month term of imprisonment to be followed by three years of supervised release. Defendant's term of supervised release began on December 12, 2014. On December 19, 2014, the Government filed a motion to revoke Defendant's supervised release based on his failure to report to the half-way house. *Petition for Warrant for Offender Under Supervision* (ECF No. 21). On May 14, 2015, Defendant waived his right to a hearing and admitted the alleged violations charged in the petition. His supervised release was revoked and he was sentenced to a twenty four month term of imprisonment. Defendant alleges that the criminal complaint in this case was filed one month before he was scheduled to be released from custody.

Defendant argues that he has been prejudiced by the Government's delay in charging him with the January 1, 2015 carjacking offense due to the destruction of the recording of the victim's 911 call. The parties stipulate that the Henderson, Nevada Police Department has a standard policy of preserving a 911 call recording for a period of 18 months, after which it is destroyed unless a request is made to preserve the recording. The recording of the victim's 911 call was not preserved and it was presumably destroyed some time after July 1, 2016 (18 months after the date of the call) and before Defendant's November 4, 2016 initial appearance on the criminal complaint.

On June 16, 2017, the defense interviewed the operator who received the alleged victim's 911 call. The Defendant states:

> According to Ms. Silva-Montano, she was working as a 911 operator on January 1, 2015. Ms. Silva-Montano does not recall the specifics of the call involved in this case except for two specific facts (1) there was a yellow pickup truck and (2) the victim knew one of the alleged defendants

. . .

. . .

in the case. Other than that, the operator was unable to give information regarding how the victim sounded on the call, or any other details surrounding the call itself.

*Defendant's Supplemental Brief* (ECF No. 44), pg. 2.

## DISCUSSION

The Fifth Amendment guarantees that a defendant will not be denied due process of law as a result of excessive preindictment delay. *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989); *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992); *United States v. Doe*, 149 F.3d 945, 948 (9th Cir. 1998); and *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007). The court applies a two-part test to determine whether a violation of due process has occurred. First, the defendant must prove that he suffered actual, non-speculative prejudice from the delay. *Sherlock*, 962 F.2d at 1353. Second, the defendant must show that the delay, when balanced against the prosecution's reasons for it, offends those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id.* at 1353-54.

"The defendant has a heavy burden to prove that a preindictment delay caused actual prejudice: the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." *Sherlock*, at 1154 (quoting *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985)). Before reaching the balancing portion of the test, the court determines whether prejudice has been sufficiently proved. *Huntley*, 976 F.2d at 1290; *Doe*, 149 F.3d at 948. The burden of showing actual prejudice is heavy and is rarely met. *Sherlock*, 962 F.2d at 1354, *Huntley*, 976 at 1290, *Doe*, 149 F.3d at 948. "We have in the past emphasized that protection from lost testimony, as well as other evidence, 'generally falls solely within the ambit of the statute of limitations.' (citations omitted). To establish actual prejudice, therefore, the defendant must show that the loss of testimony meaningfully has impaired his ability to defend himself. (citations omitted). The proof must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to defendant's case (citations omitted)." *Huntley*, 976 F.2d at 1290.

Defendant Casarez has not expressly stated his theory of defense, but the implication of his argument is that the alleged victim and Jessica fabricated the story that he committed the robbery/carjacking. Defendant points to inconsistencies in the law enforcement reports regarding the

victim's relationship with Jessica and in the circumstances leading up to the alleged crime. There is conflicting information as to how long the victim and Jessica knew each other and how recently they had been in contact before the day of the alleged robbery. There is an issue whether the victim received a text message from Jessica inquiring about coming over to visit him (which the criminal complaint alleged was actually sent by Defendant Casarez impersonating Jessica), or whether Jessica spoke to the victim on the telephone before coming over.

There is an issue whether the alleged victim was expecting only Jessica to come to his house, or was aware that she was bringing a female friend. Detective Aguiar's report indicates that the victim only expected Jessica to come by and after letting her in, the male robber and other female robber entered the residence. Defendant has attached copies of text messages between the victim and Jessica in which the victim asks "are you guys on your way," indicating that he was expecting more than one individual. *Reply* (ECF No. 36), *Exhibit C.* Jessica also reportedly told the task force officers that she and the other female approached the residence and made contact with the victim. Jessica may also have told the officers that she had arranged with the victim to bring a 17 year old friend with her and that they would get "high" together. *Reply* (ECF No. 36), *Exhibit D.*

The only evidence that Defendant identifies as having been lost as a result of the Government's delay in charging him is the recording of the alleged victim's 911 call. Defendant argues that the 911 call recording may have shown additional inconsistencies in victim's statements, and would have provided an opportunity to hear the tone of his voice and assess whether the call, itself, was suspicious. While it is possible that the 911 recording may have provided evidence favorable to the Defendant, there is no definite proof that it would have. In *Sherlock*, the defendants argued that they were actually prejudiced because the alleged rape victims testified repeatedly at trial that they could not remember certain events that occurred. In rejecting defendants' claim, the court stated: "Here, the record does not indicate how [the victims] would have testified had their memories not dimmed. It does not show that the loss of their memories had meaningfully impaired defendants' abilities to defend themselves." 962 F.2d at 1354. In *United States v. Corona-Verbera*, 509 F.3d at 1113, the court also noted that when a defendant fails to make a specific showing as to what a deceased witness would have said, any argument of prejudice is complete conjecture. In this case, it is speculative whether the recording of the 911 call

7

would have contained additional inconsistencies or would have raised doubts about the caller's legitimacy based on the tone of his voice.

The law enforcement reports indicate that Henderson Police Department detectives learned on or about April 6, 2016 that Defendant Casarez was a suspect in the robbery. *Motion to Dismiss* (ECF No. 26), *Exhibit A*, pg. 000022. The criminal complaint indicates that the BATF became aware of the robbery and Defendant Casarez's alleged involvement on April 19, 2016. These documents, therefore indicate that local or federal law enforcement officers were aware that Defendant Casarez was a suspect in the robbery approximately six and a half months before the criminal complaint was filed. Jessica was interviewed at the office of the United States Attorney on August 10, 2016. At some point, the Government made the decision to wait until Defendant Casarez was about to be released from custody before filing the complaint against him. An evidentiary hearing to explore these issues would arguably be required if Defendant had demonstrated actual prejudice. Because Defendant has not shown actual prejudice, however, the Court does not reach the issue of whether the length of the delay, balanced against the Government's reasons for the delay, violates due process.

## CONCLUSION

Defendant has failed to show that he was actually prejudiced by the Government's alleged pre-indictment delay. He therefore cannot demonstrate that his Fifth Amendment right to due process of law was violated. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss Indictment (ECF No. 26) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues

from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 26th day of June, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge